No. 23-11138

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

National Association for Gun Rights, Incorporated; Texas Gun Rights, Incorporated; Patrick Carey; James Wheeler; Travis Speegle,

Plaintiffs-Appellees,

v.

Merrick Garland, U.S. Attorney General; United States Department of Justice; Steven Dettelbach, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives; Bureau of Alcohol, Tobacco, Firearms, and Explosives,

Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of Texas
District Court Case No. 4:23-cv-830 (Hon. Reed O'Connor)

**REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
  *United States Attorney*

MARK B. STERN
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ...........................................................................1

ARGUMENT ...................................................................................................................3

    I.    These Forced Reset Triggers Are Machineguns .......................................3

    II.   The Equities Favor a Stay...............................................................................9

CONCLUSION ............................................................................................................. 12

CERTIFICATE OF COMPLIANCE

## INTRODUCTION AND SUMMARY

Plaintiffs' response invokes factual disputes where none exist and fails to come to grips with the straightforward legal question presented by the district court's opinion. The court correctly observed that "there are no factual disputes regarding how FRTs work" and that "the parties' dispute centers entirely on whether FRTs qualify as machineguns under the statutory definition." Add. 9.

There is thus no dispute that when a shooter applies steady, continuous pressure on the trigger of a weapon equipped with an FRT-15 or WOT, the device automatically pushes the trigger forward against the shooter's pressure to "forcibly return the trigger to its reset state" and prevent release of the hammer for a fraction of a second while the weapon chambers a new round. Add. 2. There is likewise no dispute that if the shooter continues to apply the same degree of pressure to the trigger, the weapon will fire repeatedly with no other action by the shooter. The district court recognized as much in describing a test in which ATF used a zip tie to apply continuous pressure to the trigger: the device's trigger is "depressed in a rearward state by the zip tie," but the mechanics of the device nevertheless move the trigger slightly forward against that pressure for each shot fired. Add. 28; *see also* Mot. 5-6, 8, 12; Add. 81-90.

The district court thus correctly recognized that the fundamental question is legal. In the court's view, the fact that the trigger moves to release the hammer for each shot fired means that the weapon does not fire "by a single function of the

trigger." *See* Add. 9. The court believed that a plurality opinion in *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023) (en banc), *cert. granted*, __ S. Ct. __, 2023 WL 7266996 (Nov. 3, 2023), compelled the conclusion that each time "the trigger moves forward into its reset state and is depressed to release the hammer" constitutes a separate "function of the trigger." Add. 26.

Plaintiffs, like the district court, disregard the distinctions between these devices and the bump stocks addressed in *Cargill* that were relevant to the plurality's analysis. The *Cargill* plurality explained that its decision did not undermine the machinegun status of the Akins Accelerator—a device in which the shooter pulled the trigger once and a spring repeatedly forced the trigger against the shooter's finger, thereby releasing the hammer for each shot. 57 F.4th at 462 n.8. That the trigger moves or releases the hammer for each shot fired is not dispositive. Instead, a weapon where the shooter can "pull the trigger once to activate the firing sequence" which the device then "maintain[s] . . . of its own accord" is a machinegun. *Id.* at 462 n.8. That description applies equally to the devices at issue here.

Plaintiffs similarly fail to come to grips with the fact that the injunction upends the longstanding status quo and permits plaintiffs and their members to make and transfer devices ATF has long classified as machineguns. Plaintiffs do not seriously dispute the impact of the injunction discussed in our motion and in ATF's declaration, and give short shrift to the public interest in urging that even a stay

limited to possession would be improper because "not everyone already owns an FRT," and emphasizing that "both the individual and the association plaintiffs include persons who sell gun parts, such as FRTs." Resp. 19-20.

## ARGUMENT

### I. These Forced Reset Triggers Are Machineguns

This Court in *Cargill* addressed non-mechanical bump stocks, which were the subject of a 2018 ATF rule. That rule did not address the devices at issue here. As plaintiffs do not dispute, ATF has consistently classified devices of this kind as machineguns since 1975.

A shooter using a weapon with one of these devices can pull the trigger once, maintain continuous pressure, and fire repeatedly. The district court did not find otherwise, but concluded that it was legally irrelevant. The court believed that under the plurality's reasoning in *Cargill*, the device could not be a machinegun because it repeatedly pushes the trigger forward against the shooter's continuous pull to allow the trigger to reset and move backwards again to release the hammer. *E.g.*, Add. 26, 28. As our motion explained, that conclusion cannot be reconciled with the distinctions drawn in *Cargill* between non-mechanical bump stocks and other devices such as the Akins Accelerator.

Because the district court's ruling turns on its understanding of *Cargill,* it is useful to compare the two types of bump stocks discussed there with the devices at issue here. This chart summarizes the relevant operation of each device.

| Device | Does the trigger move to release the hammer for each shot? | Does the shooter have to do anything else to maintain the firing sequence besides pulling the trigger? | Is the device a machinegun under the *Cargill* plurality's reasoning? |
|---|---|---|---|
| **Non-mechanical bump stock** | Yes[1] | Yes—push forward with non-trigger hand[2] | No[3] |
| **Akins Accelerator** | Yes[4] | No—internal spring repeatedly forces the trigger against the shooter's finger[5] | Yes[6] |
| **FRT-15 and WOT** | Yes[7] | No—weapon will fire as long as shooter continues to apply pressure to trigger[8] | Yes |

As this illustrates, considering whether the trigger of the weapon releases the hammer for each shot, the devices at issue here are not distinguishable from the Akins

---

[1] *Cargill*, 57 F.4th at 454.
[2] *Id.* at 453-54.
[3] *Id.* at 464.
[4] *Id.* at 454; *Akins v. United States*, 312 F. App'x 197, 198 (11th Cir. 2009) (per curiam); ATF Ruling 2006-2, Dkt. No. 40-1 at ATF0002.
[5] *Cargill*, 57 F.4th at 454; *Akins*, 197 F. App'x at 198; ATF Ruling 2006-2, Dkt. No. 40-1 at ATF0002.
[6] *Cargill*, 57 F.4th at 462 n.8.

*Continued on next page.*

Accelerator. But, like the Akins Accelerator, they are clearly distinguishable from the bump stocks at issue in *Cargill* insofar as they require no other effort by the shooter apart from pulling the trigger to fire repeatedly.

The *Cargill* plurality stated that "[w]ith a [non-mechanical] bump stock, the shooter need not pull and release his trigger finger. But the shooter must still apply forward pressure to the weapon's forebody in order to maintain the shooting mechanism." 57 F.4th at 454. The plurality then noted "one important distinction" between the bump stocks at issue and other bump stocks "called mechanical bump stocks," such as the Akins Accelerator. *Id.* These mechanical bump stocks "are equipped with springs or other internal mechanical devices that automatically assist the shooter to engage in bump firing. For such a bump stock, the shooter does not have to maintain pressure on the barrel or trigger ledge in order to maintain this firing sequence." *Id.* Based on that reasoning, the plurality concluded that the government was mistaken in attempting to draw support from the Eleventh Circuit's decision in *Akins v. United States,* 197 F. App'x 197 (11th Cir. 2009) (per curiam), which upheld ATF's classification of the Akins Accelerator as a machinegun. The plurality stated: "Unlike non-mechanical bump stocks, a shooter using an Akins Accelerator need only pull the trigger once to activate the firing sequence. The mechanical bump stock then

---

[7] *E.g.*, Add. 2-3, 86-89.
[8] *E.g.*, Add. 28, 89.

maintained the bump fire of its own accord. Precisely for that reason, our decision today would not apply to an Akins Accelerator." *Cargill*, 57 F.4th at 462 n.8 (internal citation omitted).

The same reasoning applies here. In using an FRT-15 or WOT, a shooter pulls the trigger and maintains pressure on the trigger to automatically fire repeatedly, even though the trigger moves to release the hammer for each shot fired. That was likewise true of the Akins Accelerator, which used "tension supplied by [a] spring" to repeatedly "push[] the trigger into the . . . [shooter's] finger" after the shooter pulled the trigger the first time. *Akins*, 197 F. App'x at 198 (ellipsis in original); *see also Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514, 66,517 (2018) (describing operation of Akins Accelerator); *United States v. Rare Breed Triggers, LLC*, __ F. Supp. 3d __, 2023 WL 5689770 at *23 (E.D.N.Y. Sept. 5, 2023) (noting that the plurality's "analysis of the distinctions between various firearm-modification devices in fact provides further grounds to find that the [forced-reset trigger] is a machinegun.").

Plaintiffs' response is to insist that this was not in fact the plurality's analysis. Instead, they urge, "the reason that the classification of mechanical bump stocks may differ from the classification of non-mechanical bump stocks is because the *legal trigger* may be different." Resp. 17. That is simply mistaken. Some devices, when attached to an otherwise semiautomatic rifle, have a switch or other mechanism that initiates the firing sequence and thus becomes the "trigger" for statutory purposes. *See United*

6

*States v. Camp*, 343 F.3d 743, 744 (5th Cir. 2003) (addressing device that used a switch to activate a motorized fishing reel placed within the trigger guard that then repeatedly pulled and released the weapon's original trigger); *Cargill*, 57 F.4th at 462 (stating that the switch became the "legally relevant trigger"). The *Cargill* plurality observed that such reasoning could apply to an Akins Accelerator or other mechanical bump stock if there were a "switch activating" the mechanism, because the switch might become "the legal trigger." *Cargill*, 57 F.4th at 462.

The plurality was aware, however, that the Akins Accelerator did not have such a mechanism. Neither ATF, the *Cargill* plurality, nor the Eleventh Circuit in *Akins* ever suggested that the Akins Accelerator had any trigger other than the rifle trigger pulled by the shooter. *See Cargill*, 57 F.4th at 454 (explaining how mechanical bump stocks operate with no reference to an alternative trigger); *Akins*, 197 F. App'x at 198; 83 Fed. Reg. at 66,517.

Plaintiffs note that a shooter using a machinegun such as a M16 can "hold the trigger still in its most rearward position" while the weapon repeatedly fires, while the trigger here must move for each shot. Resp. 10 (quoting Add. 28). And they observe that a shooter using these devices could apply so much pressure as to prevent the trigger from moving forward, thus causing the FRT-15 or WOT to malfunction. Add. 26; Resp. 9. These observations are accurate but without legal relevance. The working of the devices is not in dispute. But the statutory definition does not turn on

7

whether the shooter can hold the trigger still at its point of maximum leverage. Instead, the point is that a shooter "need only pull the trigger once to activate the firing sequence" and the device then "maintain[s]" the firing sequence "of its own accord." *Cargill*, 57 F.4th at 462 n.8.

The salient undisputed fact is that the shooter can apply continuous pressure to the trigger—enough to release the hammer, but not enough to cause the device to malfunction—while the device automatically repeatedly forces the trigger forward, releases the hammer, and fires. Plaintiffs nowhere contest this critical fact. Indeed, plaintiffs' expert testified that with each shot these devices exert "enough pressure to move the trigger forward and reset it with the hammer, even if the shooter does not lessen his rearward pressure on the trigger," and that "[o]bviously, the rearward pressure on the trigger that the shooter is exerting is enough to have initially released the hammer, but it's not enough to have jammed the gun." Dkt. No. 56 at 42:24-43:5 (quotation marks omitted). ATF's zip-tie test illustrated the same point. ATF used a zip tie to apply a continuous amount of pressure to the trigger sufficient to release the hammer, and when that pressure was applied, the weapon fired repeatedly. *See, e.g.*, Dkt. No. 40-2 at ATF0091.

The district court discounted this evidence not because of a factual dispute, but because it disagreed as to the relevant legal inquiry, believing it "irrelevant to the statutory definition provided by Congress and as interpreted by *Cargill*," Add. 29, that

8

the shooter need only pull the trigger once to activate the firing sequence and then simply maintain continuous pressure. The district court thus fundamentally misunderstood the relationship between these devices and the bump stocks at issue in *Cargill*. The legally relevant point is that the shooter need only pull the trigger and maintain constant pressure while the weapon fires repeatedly, regardless of whether the trigger automatically moves for each shot fired.

Finally, plaintiffs for the first time suggest (Resp. 11-12) that the rule of lenity compels the conclusion that these devices are not machineguns under *Cargill*. But the majority in *Cargill* invoked the rule of lenity based on two separate perceived ambiguities in the statute as applied to non-mechanical bump stocks—whether those devices operated "by a single function of the trigger" and whether they operated "automatically." *Cargill*, 57 F.4th at 470. No such combination of ambiguities applies here. And the plurality opinion makes clear that its view does not apply to devices such as the Akins Accelerator.

## II.   The Equities Favor a Stay

The equities likewise weigh in favor of a stay pending appeal. The district court's ruling alters the longstanding status quo. Plaintiffs do not dispute that ATF has classified devices that operate in this manner as machineguns since 1975. The injunction here for the first time converts these weapons from machineguns into unregulated firearms parts that may be sold without background checks or

recordkeeping otherwise required of firearms sales. Plaintiffs' attempts to characterize the district court's order as preserving the status quo (Resp. 18) is simply mistaken. Plaintiffs are no more or less subject to a possible enforcement action now than manufacturers, distributors, or possessors of similar devices in the past five decades.

Plaintiffs largely ignore the evidence about the use of such devices in crime and why that prevalence is underreported, *see* Mot. 18-19; Add. 149-51. They assert instead that the government is free to prosecute individuals who are already violating other gun laws. Resp. 16. That misses the point entirely: the injunction allows the unfettered distribution and transfer of these devices without the very protections that would keep these devices out of the hands of convicted felons in the first place.

Plaintiffs do not dispute that these devices produce results indistinguishable from the destructive power of an M16 machinegun, and they do not dispute the significant difficulties the government will face in attempting to retrieve devices transferred while the litigation is pending. As ATF has explained, as the number of devices and the number of transfers increases, so do the odds that the devices will never be recovered. Add. 147. And all retrieval efforts will come at the expense of other law enforcement efforts, including ATF's "core mission of investigating and disrupting violent crime." Add. 147.

The government has already made clear that it does not intend to prosecute the named individual plaintiffs at this time, and they face no imminent harm that could

warrant an injunction. Their sole ground for opposing even an injunction limited to those individuals is that the associational "plaintiffs should not be sacrificed on the altar of Appellants' administrative convenience." Resp. 19. Plaintiffs' insouciant dismissal of the dangers to the public posed by the unhindered manufacture and transfer of these unregistered devices as well as the risks faced by agents attempting retrieve those weapons provides no justification for an injunction that extends to thousands of unidentified persons. Plaintiffs offer virtually no justification for declining to limit the injunction to possession other than to declare "that not everyone already owns an FRT," and to emphasize that "both the individual and the association plaintiffs include persons who sell gun parts, such as FRTs," Resp. 19-20, thus underscoring the extent to which the injunction will result in irreparable injury to the public safety.

## CONCLUSION

The preliminary injunction should be stayed.

                                              Respectfully submitted,

                                              BRIAN M. BOYNTON
                                                *Acting Assistant Attorney General*

                                            LEIGHA SIMONTON
                                                *United States Attorney*

                                            MARK B. STERN

                                            *s/ Brad Hinshelwood*
                                            BRAD HINSHELWOOD
                                              *Attorneys, Appellate Staff*
                                              *Civil Division, Room 7256*
                                              *U.S. Department of Justice*
                                              *950 Pennsylvania Avenue NW*
                                              *Washington, DC 20530*
                                              *(202) 514-7823*
                                              *bradley.a.hinshelwood@usdoj.gov*

November 2023

# CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,599 words. This reply also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Brad Hinshelwood*
Brad Hinshelwood